UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**ROY G. JACOBS individually and d/b/a CORNERSTONE
REALTY GROUP, LLC f/k/a CORNERSTONE REALTY
GROUP, INC. and CORNERSTONE REALTY GROUP,
LLC f/k/a CORNERSTONE REALTY GROUP, INC.**

                         **Plaintiffs,**


                 **-v-**                              **1:07-CV-167**


**FRED BAUM, KONSTANIN LEVIEV, THE LEVIEV
DEVELOPMENT, LLC and THE LEVIEV GROUP, LLC,**

                         **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Tarshis, Catania, Liberth, Mahon & Milligram, PLLC
Richard M. Mahon, II, Esq., of counsel
P.O. Box 1479
One Corwin Court
Newburgh, New York 12550
Attorneys for Plaintiffs

Office of Dennis B. Schlenker
Dennis B. Schlenker, Esq.
174 Washington Avenue
Albany, New York 12210
Attorney for Defendant Fred Baum

Gleason, Dunn, Walsh & O'Shea
Mark T. Walsh, Esq., of counsel
40 Beaver Street
Albany, New York 12207
Attorneys for Konstanin Leviev, the Leviev
Development, LLC and the Leviev Group, LLC

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

                **MEMORANDUM-DECISION AND ORDER**

         Presently before the Court is a motion (Dkt. No. 15) by defendants Konstanin Leviev ("K.

Leviev"), Leviev Development, LLC, and Leviev Group, LLC to dismiss the complaint against

them.  Defendants move pursuant to Rule 9(a) and (b) and Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  For reasons set forth herein, the motion is granted with leave to replead certain causes of action.

## COMPLAINT

The allegations in plaintiffs' complaint are summarized as follows.  Sleepy Hollow Lake ("Sleepy Hollow") is a 2200 acre subdivision community in Greene County, managed by the Association of Property Owners of Sleepy Hollow Lake, Inc. ("APO").  By early 2002, as a result of tax foreclosures, Greene County held title to over 400 parcels within Sleepy Hollow.

On July 19, 2002, Greene County and APO entered into a Development Rights Agreement ("Greene County/APO-DRA"), which gave APO the exclusive option to purchase, develop, market and sell the county-owned properties in Sleepy Hollow.  The agreement acknowledged that APO had separately contracted with Cornerstone Realty Group, Inc. ("Cornerstone Inc.") to develop and market certain of those properties.  The Greene County/APO-DRA provided that "the Agreement shall terminate automatically and immediately upon Cornerstone's failure to build 20 homes to completion by December 31, 2003."

On the same date, APO and Cornerstone Inc. entered into a separate Development Rights Agreement ("APO/Cornerstone-DRA"), which gave Cornerstone Inc. the exclusive option to purchase, develop, market, and sell certain Sleepy Hollow properties.  Cornerstone Inc. agreed to construct at least three model homes at locations to be agreed upon between the parties.  The agreement further provided that it would be extended for an additional two years if, within 18 months, construction of at least 20 single family homes was complete.

In December 2002, Cornerstone Inc. began negotiating an agreement with defendant Fred

Baum of Four Musketeer, LLC, ("Musketeer") whereby Cornerstone Inc. would sell, and

Musketeer would purchase and develop, certain lots identified in the APO/Cornerstone-DRA.

The complaint alleges that Baum fraudulently and deceitfully represented that Musketeer had the

capacity and financial resources to develop the Sleepy Hollow subdivision in accordance with the

APO/Cornerstone-DRA.  No purchase agreement was executed and after months of negotiations,

Baum proposed that Cornerstone Inc. work with defendants Konstantin Leviev ("K. Leviev") and

"Leviev Development."[1]

On May 30, 2003, Cornerstone Inc. and Leviev Development, LLC ("Leviev Dev. LLC")

entered into a Purchase Agreement ("Cornerstone/Leviev Purchase Agreement"), providing that

Cornerstone Inc. would sell, and Leviev Dev. LLC would purchase and develop, certain lots

identified in the APO/Cornerstone-DRA.[2]  The Cornerstone/Leviev Purchase Agreement

provides: "Leviev shall acquire all lots for construction and use good faith and diligent efforts to

complete 20 single-family residences, and convey same to third-party purchasers on or before

December 31, 2003."  Cornerstone Inc. alleges that it entered into the Cornerstone/Leviev

 Purchase Agreement based on Baum's and Leviev Development's fraudulent representations that

K. Leviev and Leviev Development were capable of building and intended to build 20 homes by

---

[1]

Throughout the complaint, plaintiffs refer to Leviev Development, LLC and Leviev Group, LLC
collectively as "Leviev Development."  However, only Leviev Development, LLC is party to the
contract on which plaintiffs sue, and, as discussed below, plaintiffs specify no basis for a claim
against Leviev Group, LLC.  Given the imprecision in pleading, the Court must frequently refer
to both Leviev companies collectively.  Where it is clear that the complaint refers specifically to
Leviev Development, LLC, the Court does so, too.

[2]

Both Baum and  K. Leviev personally guaranteed obligations under Article XIX of the Purchase
Agreement, that is, payment to Cornerstone Inc. of a $25,000 payment due to Greene County and
a 6% payment due under the agreement.

-3-

December 31, 2003, as required by the APO/Cornerstone-DRA.

The complaint further alleges that Leviev Development continually failed to make good faith and diligent efforts to construct even one home pursuant to the Cornerstone/Leviev Purchase Agreement; that K. Leviev and Leviev Development refused to meet with plaintiff Roy A. Jacobs; and that Baum told Jacobs that Baum, as Project Manager for Leviev Development, would be responsible for the project, because K. Leviev was "too busy to be personally involved." Attached to the complaint are letters from Cornerstone Inc. to Baum and Leviev Development, dated April 26, 2004 and July 19, 2004, and a letter from APO to Baum at Leviev Dev. LLC dated April 16, 2004, concerning the project delays.

On July 21, 2004, Greene County passed Resolution No. 291-04. The resolution referred to the Greene County/APO-DRA and provided that Greene County would enter into a new agreement with APO on the condition that, *inter alia*, the contract will expressly state that there is no intended third party beneficiary of the contract and that Greene County is dealing only with APO and not with any brokers, realtors, or developers. The complaint claims that Greene County passed this resolution as a result of Leviev Development's breach of the Cornerstone/Leviev Purchase Agreement.

On November 17, 2004, Greene County passed Resolution No. 440-04 rescinding Resolution No. 291-04, and stating in pertinent part:

> [T]he County legislature passed Resolution No. 291-04 which said resolution called for the sale of County-owned properties in Sleepy Hollow Lake Development under certain terms and conditions to the Homeowner's Association at Sleepy Hollow and the County no longer wishes to offer to contract with the Homeowner's Association under the terms and conditions set forth in that Resolution.

The complaint claims that Leviev Development "purposely and knowingly in bad faith

delayed the building of twenty (20) homes in anticipation of the automatic termination" of the
APO/Cornerstone-DRA and that when that contract terminated, Leviev Development "swiftly and
deceitfully contracted with Greene County and/or the APO to unilaterally develop the Sleepy
Hollow Lake subdivision."

In January 2005, Cornerstone Realty Group LLC ("Cornerstone LLC") commenced a
special proceeding in state court under N.Y.C.P.L.R. Article 78 against the County and APO
seeking, *inter alia*, a ruling that "the resolution of the Greene County legislature be deemed void
and of no force and effect" and further requesting that the July 19, 2002 agreement between the
County and APO be declared "valid and binding on the parties thereto."  New York State
Supreme Court, Greene County, converted a portion of the petition into an action for a
declaratory judgment and declared "that the contract between the County of Greene and the APO
is valid and binding as written, and further, that it terminated as of December 31, 2003."
*Cornerstone Realty Group, LLC v. County of Greene*, 2005 WL 6075236, *5 (N.Y.Sup. June 6,
2005).  The Appellate Division affirmed.  814 N.Y.S.2d 343 (3d Dep't 2006).

Count I of the complaint alleges breach of contract.  Plaintiffs claim that Leviev
Development breached the Cornerstone/Leviev Purchase Agreement with Cornerstone Inc. by
failing to complete 20 homes by December 31, 2003; failing to complete three models within 120
days; failing to submit plans and specifications for at least six model homes; and failing to
comply with various marketing and other contractual requirements.  Plaintiffs allege that, as a
result of Leviev Development's numerous bad faith breaches of the Cornerstone/Leviev Purchase
Agreement, Cornerstone Inc.'s third party rights under the Greene County/APO-DRA
automatically terminated, and Cornerstone Inc. forfeited its interest in developing Sleepy Hollow

pursuant to the APO/Cornerstone-DRA.

Count II sounds in fraud.  Count II claims that Baum "knowingly defrauded plaintiffs by negotiating on behalf of Musketeer, a fictional limited liability company that has never existed." It claims that Baum fraudulently and deceitfully represented to plaintiffs that Musketeer "had the capacity and financial resources to develop the Sleepy Hollow Lake subdivision in accordance with the provisions of" the APO/Cornerstone-DRA, and that plaintiffs reasonably and detrimentally relied on Baum's fraudulent representations by not pursuing other developers to develop Sleepy Hollow in accordance with the APO/Cornerstone-DRA.

Count II further claims that Cornerstone Inc. entered into the Cornerstone/Leviev Purchase Agreement with Leviev Dev. LLC based on Baum's and Leviev Development's fraudulent and deceitful representations, including the following representations: that K. Leviev and Leviev Development were "experienced developers"; that Leviev Development "was capable of" building 20 homes by December 31, 2003; and that Leviev Development "intended to, *inter alia*, build twenty (20) homes by December 31, 2003."  Plaintiffs aver they detrimentally relied on these fraudulent representations by not pursuing other developers to develop Sleepy Hollow. Plaintiffs claim Leviev Development "purposely and knowingly in bad faith delayed the building of twenty (20) homes in anticipation of Cornerstone's Development Rights Agreement with the APO terminating automatically[,]" whereupon Leviev Development "swiftly and deceitfully contracted with the County and/or the APO to unilaterally develop the Sleepy Hollow Lake subdivision."

In Count III, for breach of implied covenant of good faith and fair dealing, plaintiffs claim that Leviev Development acknowledged the APO/Cornerstone-DRA was conditioned upon the

construction and conveyance of 20 homes by December 31, 2003; that Cornerstone Inc. put Baum and Leviev Development on notice of the damages it would suffer if Leviev Development did not comply with the terms of the Cornerstone/Leviev Purchase Agreement; and that Leviev Development "continually failed to make a good faith effort to construct even one home pursuant to the Purchase Agreement."  As in Count II, plaintiffs claim Leviev Development "purposely and knowingly in bad faith" delayed building 20 homes, in anticipation of the automatic termination of the APO/Cornerstone-DRA, whereupon Leviev Development "swiftly and deceitfully" contracted to develop Sleepy Hollow.

In Count IV, for tortious interference, plaintiffs allege that Leviev Development tortiously interfered with Cornerstone Inc.'s business and contractual relations with APO and Greene County "by virtue of its utter lack of good faith and complete breach of the May 30, 2003 [Cornerstone/Leviev] Purchase Agreement" and that as a result, Jacobs and Cornerstone Inc. have lost their credibility with both the County Legislature and members of APO.  As in Counts II and III, plaintiffs allege Leviev Development "purposely and knowingly in bad faith" delayed building 20 homes in anticipation of the automatic termination of the APO/Cornerstone-DRA, whereupon Leviev Development "swiftly and deceitfully" contracted to develop Sleepy Hollow.

Count V sounds in *prima facie* tort.  Plaintiffs claim the defendants' actions "were committed willfully, wantonly and maliciously, without reasonable or probable cause and collectively set forth a legal pattern and cause of action sustaining prima facie tort in the State of New York."  Plaintiffs further allege that, "in committing and perpetrating the above-described acts, the sole motivation of the defendants was "disinterested malevolence,'" and that defendants acted without legal or social justification.  Plaintiffs aver that, "[b]y reason of the foregoing acts

perpetrated by defendants, plaintiffs have sustained special damages which include, but are not limited to, the following: (a) the loss of the option to develop Sleepy Hollow Lake in accordance with their Development Rights Agreement with the APO and (b) the loss of reputation and continuing business interests with the APO and Greene County."

In Count VI, plaintiffs allege injury to their business reputation. They claim the injury resulted from of defendants' lack of good faith and breach of the Cornerstone/Leviev Purchase Agreement.

Count VII alleges a "conspiracy to divert and misappropriate." Plaintiffs allege defendants Baum, K. Leviev, and Leviev Development conspired to divert and misappropriate Cornerstone Inc.'s interest in the Sleepy Hollow Lake development. Specifically, they allegedly conspired intentionally to (a) misappropriate and convert plaintiffs' interests in Sleepy Hollow Lake subdivision to their own benefit; (b) defraud and deceive plaintiffs; (c) interfere with actual and/or prospective legal and equitable rights of plaintiffs; and (d) misappropriate actual and/or prospective contractual and property interests and rights of the plaintiffs. Plaintiffs allege that defendants "specifically agreed to commit the aforesaid wrongful acts of conspiracy to divert and misappropriate"; that they specifically intended and agreed to participate in a common scheme or plan to divert and misappropriate the interests of Cornerstone Inc.; that the aforesaid wrongful acts of misappropriation were actually committed; and that defendants' acts were intentional, willful, wanton and malicious.

Count VIII is for economic duress. This count alleges defendants subjected plaintiffs to economic duress designed to extract and extort an unfair and illegal economic advantage from plaintiffs. Plaintiffs state defendants acted willfully, wantonly and maliciously, without

-8-

reasonable or probable cause.

In Count IX, breach of fiduciary duties, plaintiffs claim that a relationship of trust and confidence existed between plaintiffs and defendants Baum and K. Leviev.  Plaintiffs aver that Jacobs, Baum, and K. Leviev "formed a joint venture to develop, invest in and share profits and expenses concerning Sleepy Hollow Lake in accordance with [the APO/Cornerstone-DRA]"; that "a fiduciary relationship of trust, mutual cooperation and financial and professional interdependence" existed among plaintiffs, Baum, and K. Leviev; that Baum and K. Leviev became involved in the Sleepy Hollow Lake development "solely by virtue of their affiliation and contractual relationship with plaintiffs"; and that "by virtue of this joint venture and the specialized knowledge gained through their relationship with plaintiffs, Baum and K. Leviev owed and continue to owe to plaintiffs a fiduciary duty to protect their financial interests and provide undivided and unqualified loyalty in so doing."  The complaint alleges that Baum and K. Leviev:

> willfully, wantonly and maliciously breached their fiduciary duties and obligations to plaintiffs in the following manner:
> (a) purposely and knowingly in bad faith delaying the building of twenty (20) homes in anticipation of Cornerstone's Development Rights Agreement with the APO terminating automatically;
> (b) usurping Cornerstone's contractual right to develop Sleepy Hollow Lake and deceitfully contracting with the County and/or the APO to unilaterally develop the Sleepy Hollow Lake subdivision;
> (c) soliciting plaintiffs' customers, clients and/or business contacts to establish business relationships to compete directly with plaintiff corporation to develop Sleepy Hollow Lake; and
> (d) interfering with and damaging the longstanding relationship between plaintiffs and the APO and Greene County.

In Count X, plaintiffs seek declaratory judgment.  They ask for a declaration that defendants intentionally and/or negligently breached their contractual obligations to the plaintiffs.

-9-

Plaintiffs also seek a declaration of the amount of their direct and consequential damages.

Count XI is for an accounting.  Specifically, plaintiffs request judgment compelling defendants to account for and disclose all income, income received, proceeds received from the sales of real property and property or assets in defendants' possession from December 2002 to the present with respect to all interests in Sleepy Hollow.

Count XII asserts that plaintiffs are entitled to "a constructive trust impressed upon all profits and proceeds derived by or from defendants' development of Sleepy Hollow Lake." Plaintiffs ask the Court to direct defendants to hold such monies in trust for the benefit of plaintiffs pending the outcome of the litigation.

## APPLICABLE LAW

Defendants move to dismiss the complaint pursuant to Rule 9(a) and (b) and Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  Rule 9(a) requires a defendant to interpose specific denials upon raising issues concerning a party's capacity or authority to sue or be sued or a party's legal existence as an organized association.  Here, plaintiffs do not assert that defendants have failed to interpose proper denials.  With respect to Rule 9(b), defendants contend that in pleading fraud, plaintiffs have failed to "state with particularity the circumstances constituting fraud[.]"  The Court discusses this requirement in more detail in its discussion of plaintiffs' fraud claims, *infra*.  Defendants also contend the complaint should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) because plaintiffs lack standing.

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept the allegations of the complaint as true, and draw all reasonable inferences in favor of the nonmoving party.  *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184,

-10-

188 (2d Cir. 1998); *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65 (2007).

## DISCUSSION

### I. Parties

**Roy G. Jacobs; joint venture**

Plaintiff Roy G. Jacobs sues "individually and d/b/a Cornerstone Realty Group LLC f/k/a Cornerstone Realty Group, Inc."  As defendants point out, an individual cannot sue "d/b/a" a limited liability company or corporate entity.  *See* N.Y. Gen. Business Law, § 130(1-a)(a); (2)(a). Defendants further argue the complaint asserts no ground for Jacobs to sue individually. Cornerstone Inc. is the signatory to the two contracts upon which plaintiffs rely, *i.e.* the July 19, 2002 APO/Cornerstone-DRA and the Cornerstone/Leviev Purchase Agreement.  Jacobs alleges no basis upon which he could individually pursue the rights of Cornerstone Inc. or Cornerstone LLC.

In opposition to the motion, plaintiffs assert that Jacobs' individual claim is stated in Count IX, which alleges breach of fiduciary duties based on Jacobs' participation in a joint venture with Baum and K. Leviev "to develop, invest in and share profits and expenses concerning Sleepy Hollow Lake in accordance with Cornerstone's Development Rights Agreement with the APO."  Jacobs fails to set forth facts to establish the "indispensible essential" of a joint venture: "a mutual promise or undertaking of the parties to share in the profits of the

-11-

business and submit to the burden of making good the losses." *Matter of Steinbeck v. Gerosa*, 4

N.Y.2d 302, 317 (1958) (citation omitted); *accord Langer v. Dadabhoy*, 843 N.Y.S.2d 262, 263

(1st Dep't 2007) (dismissing complaint).  As the *Steinbeck* court stated: "[I]t is not enough that

two parties have agreed together to act in concert to achieve some stated economic objective.

Such agreement, by itself, creates no more than a contractual obligation[.]"  4 N.Y.2d at 317

(citation and internal quote omitted).  Under New York law, where a plaintiff fails to plead "a

mutual promise or undertaking to share the burden of the losses of the alleged enterprise," a cause

of action alleging a joint venture should be dismissed.  *Latture v. Smith*, 766 N.Y.S.2d 906, 906-

07 (2d Dep't 2003).  Indeed, on this record, the fact that Jacobs shielded himself from risk of

individual loss by contracting solely in the corporate form would appear to preclude any inference

that he undertook individually to share the burden of the losses of the venture.  Accepting the

allegations of the complaint as true, and drawing all reasonable inferences in favor of plaintiffs,

the Court finds that the complaint fails as a matter of law to plead a joint venture in which Jacobs

was a participant.[3]  Jacobs asserts no other claim belonging to him individually, and all claims on

his behalf are dismissed with leave to replead.

**Cornerstone LLC; Cornerstone Inc.**

Defendants contend that plaintiff Cornerstone Realty Group, LLC ("Cornerstone LLC")

lacks standing inasmuch as Cornerstone Inc. – not Cornerstone LLC – is party to the contracts in

issue.  Cornerstone Inc. has not sued in its own name.  Plaintiffs respond that Cornerstone Inc. has

assigned its rights under the Cornerstone/Leviev Purchase Agreement to Cornerstone LLC.  The

---

[3] Presently there is no need to address the cross-claim in Baum's answer that he entered into an oral
joint venture agreement with K. Leviev, Leviev Dev. LLC, and Leviev Group LLC.

Assignment Agreement, executed on October 29, 2003 by Roy Jacobs both as President of

Cornerstone Inc., and as Managing Member of Cornerstone LLC, recites:

> Cornerstone Realty Group, Inc., the Assignor, hereby assigns all right, title
> and interest and payments due it under the aforesaid Purchase Agreement
> to Cornerstone Realty Group, LLC, and Cornerstone Realty Group, LLC,
> the Assignee, hereby assumes all duties and obligations of Assignor under
> the aforesaid Purchase Agreement.

Defendants reply that the assignment does not specify that Cornerstone Inc. assigns its tort

claims to Cornerstone LLC.  It is true that, under New York law, "the assignment of the right to

assert contract claims does not automatically entail the right to assert tort claims arising from that

contract." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146,

151 (2d Cir. 1995).  Under the circumstances appearing in the complaint, a strong argument could

be made that the October 29, 2003 assignment contemplated the transfer of tort claims as well as

contract claims, thus divesting Cornerstone Inc. of any such claims.  Such an argument would be

supported by the facts that Cornerstone LLC sues "f/k/a" Cornerstone Inc. and that Cornerstone

Inc. asserts no claims in its own right.  However, neither the complaint nor any attachment alleges

the assignment or any other reason to find that Cornerstone LLC has a right to assert the claims

upon which it sues.

It is reasonable to expect plaintiffs in this case to have knowledge of and to plead with

precision the person, entity, and/or entities that are asserting a particular claim.  All claims on

behalf of Cornerstone LLC are dismissed with leave to replead.  To the extent that plaintiffs may

have intended the complaint to assert any claims on behalf of Cornerstone Inc., such claims are

also dismissed with leave to replead.

**K. Leviev**

Defendants argue that the complaint states no claim against K. Leviev.  The complaint alleges he is an officer, director, and/or membership unit owner of Leviev Dev. LLC and Leviev Group, LLC.  Plaintiffs contend K. Leviev is liable as an officer or director who participated in or had knowledge of the fraudulent and otherwise tortious scheme which is the subject of this action.

The allegations against K. Leviev in Count II, based on fraud, lack particularity, despite the fact that plaintiffs may reasonably be expected to know what representations were made to them by K. Leviev and the circumstances in which they were made.  As to K. Leviev, Count II alleges: "Defendants fraudulently induced Cornerstone to believe K. Leviev and Leviev Development were experienced developers who intended to develop the Sleepy Hollow Lake subdivision in accordance with Cornerstone's Development Rights Agreement with the APO."  Plaintiffs set forth no specificity regarding these allegedly fraudulent representations.  The only other allegation regarding K. Leviev in Count II is that he "refused to meet with" Roy Jacobs of Cornerstone Inc.; all other conduct alleged in Count II was committed by Baum or Leviev Development.

The allegations against K. Leviev in other causes of action do not remedy Count II's lack of particularity.  For example, Count III, for breach of implied covenant of good faith and fair dealing, claims only that K. Leviev "routinely failed to show up at scheduled meetings" with Cornerstone Inc. and refused "in bad faith" to meet with Jacobs.  Count VII alleges in general terms that defendants Baum, K. Leviev, and Leviev Development conspired to divert and misappropriate Cornerstone Inc.'s interest in Sleepy Hollow.  The Court has already found that plaintiffs did not adequately plead a joint venture formed by Jacobs, Baum, and K. Leviev (Count IX).  No cause of action alleges any factual basis for a claim against K. Leviev in his individual

capacity.

Plaintiffs point out that under New York law, although the officers and directors of a corporation are not generally liable for their corporation's debts or its breach of a contract, officers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it. *See Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994); *Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46, 55 (2001) (complaint states claim against company's principal; knowledge of or participation in fraudulent scheme could be inferred from allegations that he participated in company's operations on a day-to-day basis, was actively involved in its marketing and sales activities, participated personally in sale of property, and personally made fraudulent promises to at least one buyer); *A-1 Check Cashing Serv., Inc. v. Goodman*, 538 N.Y.S.2d 830, 831 (2d Dep't 1989) ("A corporate officer is individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business[.]").  It appears from the complaint that plaintiffs may be able to make out such a claim.  To the extent that the basis for this claim is within plaintiffs' knowledge, they should plead it.  Plaintiffs' claims against K. Leviev are dismissed with leave to replead with the requisite specificity.

**Leviev Group, LLC**

Leviev Dev. LLC – not Leviev Group, LLC – entered into the Cornerstone/Leviev Purchase Agreement.  The complaint simply states that Leviev Dev. LLC and Leviev Group, LLC are Delaware limited liability companies of which K. Leviev is "an officer, director and/or membership unit owner"; thereafter the complaint refers to both companies "collectively" as "Leviev Development."  Plaintiffs do not oppose so much of defendants' motion as seeks

-15-

dismissal of all claims against Leviev Group, LLC.  In the interest of fairness, however, particularly because there has been no discovery, the Court dismisses the claims against this defendant without prejudice.  In any repleaded complaint, however, plaintiffs are requested to plead their claims with the greatest specificity possible.  Accordingly, insofar as the complaint states claims against Leviev Group, LLC, it is dismissed without prejudice.

## II. Causes of Action

As set forth above, the Court concludes that the complaint must be repleaded because of deficiencies in the allegations regarding various parties.  Assuming that some or all of these deficiencies can be corrected in an amended complaint, the Court turns to address the substance of the causes of action.

**Count I – Breach of contract**

In Count I, their breach of contract claim, plaintiffs rely in part on the following provision in the Cornerstone/Leviev Purchase Agreement:

> Leviev shall acquire all lots for construction and use good faith and diligent efforts to complete 20 single-family residences, and convey same to third-party purchasers on or before December 31, 2003.  Leviev acknowledges that Cornerstone Development's agreement with APO and the Development's rights agreement between APO and the County of Greene require 20 homes to be completed by December 31, 2003.

The complaint alleges that Leviev Development continually failed to make good faith and diligent efforts to construct even one home pursuant to the Cornerstone/Leviev Purchase Agreement, thus breaching that contract.  In Count I, plaintiffs also rely on a number of other alleged breaches, such as Leviev Development's failure to "select at least six models homes to be constructed and submit plans and specifications for same"; spend at least $8,000 per month on advertising and marketing; and provide written proof to Cornerstone Inc. that "it entered into an Agreement with

a modular manufacturer to construct and supply at least six model homes to be offered for sale at Sleepy Hollow[.]"  As a result of Leviev Development's breach of the Cornerstone/Leviev Purchase Agreement, Greene County terminated the Greene County/APO-DRA, resulting in the termination of the APO/Cornerstone-DRA, thus damaging Cornerstone Inc.  Dismissal of this claim on the merits is not warranted.  Defendants' motion to dismiss the claim on the ground that it fails to state a claim is denied.

**Count II – Fraud**

Defendants move to dismiss Count II, alleging fraud by Baum and Leviev Development. Fed.R.Civ.P. 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Rule 9(b) must be read together with rule 8(a) which requires only a "short and plain statement" of the claims for relief.  *See Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990).  "To pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation."  *Id.* Defendants argue that the allegations in the complaint do not meet this requirement.

Defendants also argue that plaintiffs have no fraud claim distinct from their breach of contract claim.  Where a plaintiff pleads both a fraud claim and a breach of contract claim, the plaintiff must distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages.  *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).  Although "a valid fraud claim may be premised on

-17-

misrepresentations that were made before the formation of the contract and that induced the plaintiff to enter the contract," *Cohen*, 25 F.3d at 1173, an assertion that the defendants made intentionally false statements regarding their intent to fulfill the terms of the contract is not sufficient to support a claim of fraud.  *See Bridgestone/Firestone*, 98 F.3d at 19.

Here, plaintiffs allege that defendants falsely represented to Cornerstone Inc. that K. Leviev and Leviev Development were "experienced developers" and that Leviev Development "was capable of" building 20 homes by December 31, 2003.[4]  Such alleged false representations may be distinguishable from false statements regarding defendants' intent to fulfill the terms of the contract.  Further, if warranted by the facts, plaintiffs may be able to articulate a claim that defendants entered into the Cornerstone/Leviev Purchase Agreement and then breached it as part of a larger scheme to appropriate to themselves Cornerstone Inc.'s rights under the Greene County/APO-DRA and the APO/Cornerstone-DRA.  Accordingly, the Court declines to dismiss the fraud cause of action on the ground that it is indistinguishable from the breach of contract claim.

The allegations are not, however, pleaded with the specificity required by Rule 9(b).  It cannot be said on this record that repleading the fraud cause of action would be futile.  *See Caputo v. Pfizer, Inc*., 267 F.3d 181, 191 (2d Cir. 2001).  Accordingly, Count II is dismissed on this ground with leave to replead.

**Count III – Breach of implied covenant of good faith and fair dealing**

Count III is for breach of the implied covenant of good faith and fair dealing. Under New

---

[4] At this point, the Court cannot evaluate whether the merger clause in the Cornerstone/Leviev Purchase Agreement has any effect on this claim.

-18-

York law:

> Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance.
>
> Encompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included. This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

*Dalton v. Educational Testing Serv*., 87 N.Y.2d 384, 389 (1995) (citation and internal quotes omitted). In this regard, the complaint claims that Leviev Development acknowledged that the APO/Cornerstone-DRA was conditioned upon Cornerstone Inc.'s having constructed and conveyed 20 homes by December 31, 2003; that Cornerstone Inc. put Baum and Leviev Development on notice of the damages Cornerstone would suffer if Leviev Development did not comply with the terms of the Cornerstone/Leviev Purchase Agreement; that Leviev Development "continually failed to make a good faith effort to construct even one home pursuant to the Purchase Agreement"; and that Leviev Development "purposely and knowingly in bad faith" delayed building 20 homes, in anticipation of the automatic termination of the APO/Cornerstone-DRA, whereupon Leviev Development "swiftly and deceitfully" contracted to develop Sleepy Hollow.

Based on these allegations, it cannot be said that, accepting the allegations of the complaint as true, and drawing all reasonable inferences in favor of plaintiffs, the complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing. Dismissal of Count III on the ground of failure to state a claim is denied.

**Statute of limitations**

-19-

Defendants move to dismiss the following causes of action on statute of limitations grounds: Count IV, tortious interference; Count V, *prima facie* tort; Count VI, injury to business reputation; Count VII, conspiracy to divert and misappropriate; Count VIII, economic duress; and Count IX, breach of fiduciary duty.   In opposition, plaintiffs argue only that their claims for tortious interference (Count IV) and conspiracy to divert and misappropriate (Count VII) are timely.  Plaintiffs are deemed to have abandoned Counts V (*prima facie* tort), VI (injury to business reputation), and VIII (economic duress); in any event, based on the complaint, these causes of action appear to be time-barred.

With respect to Count IV for tortious interference with contract, it is well-settled that the applicable limitations period is three years.  *See* N.Y.C.P.L.R. 214(4); *Vanderminden v. Vanderminden*, 641 N.Y.S.2d 732, 738 (3d Dep't 1996).  Defendants contend that the claim accrued on December 31, 2003, when the Greene County/APO-DRA terminated automatically, and that therefore this action, commenced on February 15, 2007, is time-barred.  Plaintiffs argue they did not sustain any injury, and therefore this claim did not accrue, until July 19, 2004, when Greene County passed Resolution 291-04, stating that it would enter into a new agreement with APO, which agreement would provide that there was no intended third party beneficiary, thus effectively terminating Cornerstone Inc.'s rights under the Greene County/APO-DRA and APO/Cornerstone-DRA.  The issue cannot be resolved at the pleading stage.  Likewise, it cannot be determined at this point whether Count VII – claiming that Baum, K. Leviev, and Leviev Development conspired to divert and misappropriate Cornerstone Inc.'s interest in Sleepy Hollow – is time-barred.  Dismissal of Counts IV and VII on statute of limitations grounds is denied.

If plaintiffs are able properly to replead their joint venture claim, defendants concede that

a claim for equitable relief for an alleged breach of fiduciary duty stemming from the joint venture (Count IX) would be subject to a six-year statute of limitations.  Thus, it would not be time-barred.

Accordingly, Counts V (*prima facie* tort), VI (injury to business reputation), and VIII (economic duress) are dismissed with prejudice on statute of limitations grounds.  Dismissal of Counts IV (tortious interference), VII (conspiracy to divert and misappropriate), and IX (breach of fiduciary duty) on statute of limitations grounds is denied.

**Conspiracy to divert and misappropriate**

Count VII alleges that defendants Baum, K. Leviev, and Leviev Development conspired to divert and misappropriate Cornerstone Inc.'s interest in the Sleepy Hollow Lake development.  As defendants point out, under New York law, civil conspiracy is not an independent tort, and it is time-barred when the substantive tort upon which it depends is time-barred.  *See Schlotthauer v. Sanders*, 545 N.Y.S.2d 197, 199 (2d Dep't 1989).  To the extent Count VII is based on causes of action that are time-barred, it is time-barred.  To the extent it is based on fraud, it lacks specificity.  The count is dismissed with leave to replead.

**Claims for breach of fiduciary duty, accounting, and constructive trust**

The Court has concluded that Jacobs does not adequately plead that he participated in a joint venture with Baum and K. Leviev.  There is no other support for plaintiffs' claim that a fiduciary relationship existed between any plaintiff and any defendant.  Thus, there is no basis for Count IX (breach of fiduciary duty), Count XI (accounting), and Count XII (constructive trust).  These counts are dismissed without prejudice; if plaintiffs replead Jacobs' joint venture claim, they may replead these claims if warranted.

**Declaratory judgment**

In Count X, plaintiffs seek judgment declaring that defendants intentionally and/or negligently breached their contractual obligations to plaintiffs. Plaintiffs also seek a declaration of the amount of their direct and consequential damages. "A cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract." *Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 281 (1st Dep't 1988); *accord Artech Info. Sys., L.L.C. v. Tee*, 721 N.Y.S.2d 321, 327 (1st Dep't 2001). Count X is dismissed with prejudice.

## CONCLUSION

In view of the Court's holdings, the Court does not reach any other issues raised by the parties. In the event that plaintiffs choose to replead the complaint, the Court encourages them to formulate and articulate their claims carefully to facilitate the progress of the action.

It is therefore

ORDERED that motion (Dkt. No. 15) by defendants Konstanin Leviev, Leviev Development, LLC, and Leviev Group, LLC to dismiss the complaint against them is granted with leave to replead certain causes of action as follows:

- Counts V (*prima facie* tort); VI (injury to business reputation), VIII (economic duress), and X (declaratory judgment) are dismissed with prejudice; and

- all other claims are dismissed with leave to replead;

and it is further

ORDERED that if plaintiffs choose to file an amended complaint in accordance herewith, they shall do so no later than 20 days after the date of this Order; and it is further

-22-

ORDERED that defendants' 20-day period to answer shall begin to run upon the termination of plaintiffs' 20-day period to file an amended complaint, or upon plaintiffs' filing of an amended complaint, whichever first occurs.

IT IS SO ORDERED.

March 24, 2008
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

-23-